IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GARY L. PEARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv55-CSC |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction.**

The history of this case is convoluted.  In 1994, the plaintiff initially applied for disability insurance benefits pursuant to Title II of the Social Security Act,  42 U.S.C. § 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act,  42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ awarded benefits commencing in 1991. In 1996, the Commissioner gave notice to the plaintiff that his benefits would cease based on his alcohol abuse.  After a hearing before and an unfavorable decision from an ALJ, the Appeals Council remanded the case to the ALJ in 2000.

---

[1]  Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and pursuant to FED. R. CIV. P.  25(d)(1) is substituted as the defendant.

Meanwhile, the plaintiff filed a new application for disability benefits in 1999 alleging an onset date of 1991.  After administrative proceedings, a hearing before an ALJ and Appeals Council consideration of an unfavorable decision, the plaintiff sought review of these decisions in this court.  Over the plaintiff's objections, the court remanded the case to the Commissioner based on the Commissioner's motion.  *Pearson v. Barnhart*, 2:02cv541-VPM (M.D. Ala. 2003).  Following this remand, three hearings were held before an ALJ and on October 25, 2004, the ALJ denied the plaintiff's applications.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[3]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

---

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

To make this determination[4] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its

---

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[5]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 43 years old at the time of the 2003 hearing before the ALJ and has a 12th grade (high school equivalency diploma) education.  The plaintiff's prior work experience includes work as a member of the United States Navy, a pulpwood logger, and a plant delivery person.  Following the last administrative hearing, the ALJ concluded that the plaintiff has impairments of medically controlled hypertension, degenerative disc disease, alcohol dependence and mental impairments.  Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform work.

**B.  Statement of the issues.**  As set forth by the plaintiff, the issues for resolution by the court are as follows:

1.   The ALJ failed to consider and state what weight he gave to the Veterans Administration's (VA) finding of total disability.

2.   The ALJ applied an improper legal standard in finding that the plaintiff's alcohol abuse was material to the disability finding.

4

3.  The ALJ improperly questioned the vocational expert (VE).

## IV.  Discussion of the Issues

**A.  The VA's Disability Determination.**  In 2003, the VA found the plaintiff had 50% disability based on bipolar disorder, a 40% service connected disability based on low back pain, and a 10% service connected disability based on hypertension.  These finding led the VA to conclude that the plaintiff had a combined disability of 70% which for VA purposes meant he was "unable to maintain gainful employment."  (R. 1268).  It is correct that in this case the ALJ, while recognizing that the VA disability rating was entitled to "great weight," did not state explicitly what weight he gave to that rating.  However, that failure in the context of this case is immaterial.  The ALJ found that the plaintiff was disabled due to his depression.

> I restate that in the decision dated January 31, 2001, I found the severity of the claimant's major depression meets the requirement of § 12.04, as evaluate under 12.09, and he was disabled within the meaning of the Social Security Act beginning January 4, 1996 (Exhibit C45 at 12 and 13).  I find this remains true through the date of this decision.

(R. 40).

That conclusion of disability did not end the ALJ's duty under the statutes governing Social Security disability, however.  In March 1996, Congress passed the Contract with America Advancement Act, which denied social security disability benefits if alcoholism or drug addiction materially contributed to the disability. Pub.L. No. 104-121 § 105(a)(1), (b)(1), 110 Stat. 847 (codified at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).  Under the Social Security Administration's regulations, the "key factor" in determining whether a

claimant's alcohol or drug abuse is a contributing material factor to the claimant's disability is "whether we would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). An ALJ is to determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether any of the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

In this circuit, in disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination pursuant to 42 U.S.C. § 423(d)(2)(C) or § 1382c(a)(3)(J). *Doughty v. Apfel*, 245 F.3d 1274, 1279-81 (11th Cir. 2001). Thus, in the first instance, the plaintiff's argument about the ALJ's failure to state the weight he accorded the VA rating misses the mark because it shifts the burden from the plaintiff to the Commissioner with regard to the effect of the plaintiff's alcoholism. Second, the argument is immaterial because the ALJ found the plaintiff's depression to be a disabling

6

condition.  That finding is entirely consistent with the VA rating.[6]  Thus, the ALJ's failure

to state what weight he gave to the rating is harmless error.  *See Diorio v. Heckler*, 721 F.2d

726, 728 (11th Cir. 1983) (When an incorrect application of the regulations results in harmless

error because the correct application would not contradict the ALJ's ultimate findings, the

ALJ's decision will stand).  There is no probability that a proper statement of the weight the

ALJ gave to the VA rating would have had any effect on the decision.  As the Commissioner

correctly points out, there is no evidence that the VA considers the effect of alcoholism in

its disability determinations.

**B.  Materiality of Alcohol Abuse.**  The plaintiff argues that the ALJ applied the

improper legal standard in finding that the plaintiff's alcohol abuse was material to the

disability finding.  A claimant "shall not be considered to be disabled for purposes of this

subchapter if alcoholism or drug addiction would (but for this subparagraph) be a

contributing factor material to the Commissioner's determination that the individual is

disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as

amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C)

provide that once the Commissioner determines a claimant to be disabled and finds medical

evidence of drug addiction or alcoholism, the Commissioner then "must determine whether

... drug addiction or alcoholism is a contributing factor material to the determination of

disability." 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or

---

[6]  Of course, the VA rating was also dependent upon the plaintiff's back condition and his
hypertension.  However, it is evident that these conditions alone or in combination are not disabling.

alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

The ALJ is to determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. Then the ALJ must determine whether any of the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

Pearson's contention that the ALJ applied the incorrect legal standard has several aspects. First, relying on *Sousa v. Callahan*, 143 F.3d 1240 (9th Cir. 1998), Pearson contends that the ALJ failed to

> distinguish between substance abuse contributing to the disability and *the disability remaining after the claimant stopped using drugs or alcohol.* The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too.

143 F.3d at 1245 (emphasis in original).

Pearson supports his argument by isolating a single statement of the ALJ from the 2001 opinion: "The medical record clearly demonstrates that the claimant's mental impairments are either entirely caused by or greatly exacerbated by alcohol abuse." (R. 806) As if often the case, an isolated statement is not determinative of what the ALJ did in this case.  Thus, the court will look at what the ALJ did do in this case.

First, the ALJ found as follows:

I restate that in the decision dated January 31, 2001, I found the severity of the claimant's major depression meets the requirements of § 12.04, as evaluated under 12.09, and he was disabled within the meaning of the Social Security Act beginning January 4, 1996 . . .  I find this remains true through the date of this decision.

(R. 40).

Next, the ALJ describes the next step in his analysis.

Given the evidence of alcohol abuse, I must determine whether, excluding the effects of alcohol abuse, the claimant has a "severe" impairment of impairments, i.e., impairments which have more than a minimal impact on the ability to perform basic work activities.  Given that the record demonstrates continued alcohol abuse, I have considered the effects of alcohol abuse on the claimants' ability to perform work activities.

\*          \*          \*          \*

I find that excluding the effect of alcohol abuse, the claimant has (1) hypertension, medically controlled; (2) degenerative disc disease at L5-S1; (3) possible seizure disorder with normal electroencephalograms; (4) malingering; and (5) bipolar disorder and/or schizoaffective disorder, bipolar type, well controlled with medication.

(R. 40-41).

Following the sequential evaluation steps, the ALJ next concluded that Pearson's

impairments do not meet or equal any of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then proceeded to determine whether Pearson had the residual functional capacity to perform any of his past relevant work.

> On consideration of the record, I find that when the effects of alcohol abuse are excluded, the claimant retains the residual functional capacity to perform work within the parameters specified in the MSOP[7] completed by Dr. Watson . . . and in the MSOFM[8] completed by Dr. Jacobs . . .

(R. 43).

Based on his determination about Pearson's residual functional capacity, the ALJ found that he could not perform any past relevant work.  *Id.*  That conclusion, of course, led the ALJ to the final and determinative step in the sequential evaluation process: whether there exists in significant numbers in the national economy work that Pearson is able to perform.  Based on his conclusions about Pearson's residual functional capacity, and the vocational evidence, the ALJ concluded that Pearson could perform

> jobs within a restricted rage (sic) of sedentary and light work with a sit/stand option, including Sales Clerk with 2,000 jobs regionally and 147,000 jobs nationally; Counter Clerk with 1,600 jobs regionally and 102,000 jobs nationally; Telephone Solicitor with 3,100 regionally and 211,000 jobs nationally; Order Clerk, Food & Beverage with 1,900 jobs regionally and 139,000 jobs nationally; and Diet Clerk with 1,600 jobs regionally and 122,000 jobs nationally.  *Id.* at 3

> In consideration of the record, including credible expert vocational testimony, I find that the claimant retains the residual functional capacity to perform jobs existing in the significant numbers in the national economy.  Thus, I conclude that the claimant has not been disabled within the meaning of the Social

---

[7] The acronym "MSOP" means "medical source opinion (physical)."

[8] The acronym "MSOFM" means "medical source opinion form (mental)."

Security Act since the alleged onset date.

(R. 44).

As is evident from the foregoing, the ALJ determined which of Pearson's impairments remained after excluding the effects of alcohol and then assessed Pearson's residual functional capacity based on these impairments. This approach is fully consistent with the applicable legal standards.

Next, Pearson mounts an argument that is premised on an attack on the ALJ's conclusion that Pearson's testimony that he had stopped abusing alcohol lacked credibility.

> The ALJ made the conclusion of law that "[t]he claimant's continuing alcohol abuse is a contributing factor material to the finding that his (sic) is disabled" under Listing 12.04. This conclusion was based on his finding of fact that the Plaintiff was continuing to abuse alcohol (R. 45). The ALJ based his finding of fact that the "claimant's continuing alcohol abuse" on one entry in the medical records. (R. 40). On June 4, 2003, the Plaintiff appeared at the Tuskegee VA Medical Center, and his treating nurse practitioner Brenda Moon noted that "he mimizes (sic) his alcohol usage but his cousin, our RN, is aware of the problem." Mr. Pearson also "report[ed] [that] he did drink Memorial day but in general not over the last 2-3 months." (R. 1372) As a result of this one medical report, over an eight year period of time, the ALJ made the finding of fact that "I find that while the claimant may have stopped abusing alcohol for short periods, *the evidence does not demonstrate that the claimant has sustained from alcohol for prolonged periods."* (emphasis supplied) (R. 40). The ALJ's finding of fact that Mr. Pearson is continuing to use or abuse alcohol is not supported by substantial evidence.

(Pl's Mem. Br. at 14).

It is unnecessary for the court to resolve the question of whether substantial evidence supports the ALJ's credibility determination in this regard. Whether Pearson was continuing to abuse alcohol is immaterial to the issues in this case. It is undisputed that Pearson has a

long history of alcohol abuse. That history is sufficient to require the ALJ to engage in the materiality determination, but that determination is properly conducted by determining whether a disabling impairment exists if Pearson stopped any abuse. The ALJ did that in this case. Thus, whether Pearson in fact did continue his abuse is completely irrelevant to whether the ALJ applied the correct legal standard.

Finally, Pearson complains that the ALJ improperly based his conclusion that his mental impairments were not disabling excluding the effects of alcohol "entirely on the testimony of Nancy Sack, Ph.D., a non-examining medical expert . . . " (Pl's Mem. Br. at 16) Aside from noting that Dr. Sack never examined him, Pearson primarily complains that her conclusion about the affect of alcohol on his GAF[9] scores was inconsistent with the record because "no other examining or treating physician or psychiatrist had reached the same conclusion that without alcohol use the Plaintiff could work." *Id.*

The first problem with Pearson's argument is that the burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits. *See* 20 C.F.R. § 404.1512(a). More particularly, in materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of

---

[9] A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 2000). The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings. *Id.* at 34.

proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. *Doughty*, 245 F.3d at 1280. In other words, it is up to Pearson to show that his mental impairments preclude him from performing any work in the national economy even if he stopped abusing alcohol. Pearson has not made this showing. Indeed, Pearson's recitation of the evidence from his treating psychiatrist, while reflecting moderate mental impairment, does not show that he is not able to perform they types of work identified by the ALJ. Pearson's admitted daily activities, which include reading and walking, further belie the contention that he is disabled. Finally, as explained below, the ALJ unequivocally stated that he relied on the reports of Drs. Watson and Jacobs, not Dr. Sack.

After careful consideration of the administrative record, the court concludes that the ALJ applied the correct legal standard and that Pearson failed to prove that his alcoholism was not a contributing factor material to the disability determination. This brings the court to the vocational issues.

**C.   The Vocational Issues.**   Pearson contends that the interrogatories to the vocational expert (VE) were inadequate because they did not include reference to pain, side effects of medication and other subjective, non-exertional impairments.

> When, as here, a claimant has established that an impairment prevents her from performing her past relevant work, the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.1999). When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments (such as pain or dizziness) that significantly limit basic work skills, the preferred method of demonstrating that the claimant can perform other jobs is through testimony of a vocational expert. *Id.* at 1229. However, for a vocational expert's

testimony to be substantial evidence, the ALJ must pose a hypothetical to the vocational expert that includes all of the claimant's found impairments. *Id.*

*May v. Commissioner of Social Sec. Admin.,* __ F.3d __, __, 2007 WL 1034725, *4 (11th Cir. April 6, 2007).

After careful review of the record, the court concludes that the ALJ's decision is supported by substantial evidence.  The court notes that at the three most recent hearings held in 2003 and 2004, a vocational expert testified based on mental and physical evaluations identified in the record as Exhibits C-42 and C-43.  At the last hearing, the ALJ also referred the vocational expert to Exhibits C-80 and C-82.  However, the ALJ's October 25, 2004 decision plainly does not rely on that evidence.   Rather, the ALJ relied on written interrogatories posed to the vocational expert by the ALJ.  Those interrogatories incorporated the capabilities and limitations reflected in an August 26, 2003 psychological examination conducted by Dr. J. Walter Jacobs and an August 25, 2003 neurological examination conducted by Dr. William Watson.  (R. 1310)  Copies of the reports of those examinations were copied into the ALJ's decision.

With this background, the court will now look at the plaintiff's contentions.  The plaintiff contends he has severe back pain.  The ALJ found that, when the effects of alcohol are not considered, the plaintiff's "allegations of pain and functional limitations are not entirely credible." (R. 44).  That, of course, does not specifically answer the question of the nature of the plaintiff's pain.  However, the court is aided by another of the ALJ's findings in which he concludes that excluding the effects of alcohol, the plaintiff retained "the

residual functional capacity to perform work within the parameters specified in the MSOP

completed by Dr. Watson . . . and in the MSOFM completed by Dr. Jacobs . . . " (R. 45) The

court is also aided by the ALJ's other written findings about the plaintiff's allegations of

pain.

> The claimant's testimony of disabling pain and functional restrictions is
> disproportionate to the objective medical evidence.  The record does not
> contain signs and findings that could reasonably be expected to produce the
> degree and intensity of pain and limitations alleged.  There are not any
> diagnostic studies demonstrating abnormalities that might cause such severe
> symptoms.  There are studies demonstrative otherwise.  Electromyography
> performed for the claimant . . .  reveals no evidence of radiculopathy or
> neuropathy . . .  Moreover, there is or little evidence of an emotional
> component likely to produce pain of pyschogenic nature.  The physical
> findings in the record do not establish the existence of neurological deficits,
> significant weight loss, muscle atrophy, or other observable signs usually
> associated with protracted pain of the intensity, frequency, and severity
> alleged.

(R. 42).

    As required to do, the ALJ articulated specific reasons for not crediting the plaintiff's

allegations of pain and other functional limitations. *Foote v.Chater*, 67 F.3d 1553, 1561-62

(11th Cir. 1995); *Jones v. Dep't of Health & Human  Servs.*, 941 F.2d 1529,1532 (11th Cir.

1991) (articulated reasons must be based on substantial evidence).  A reviewing court will

not disturb a clearly articulated credibility finding with substantial supporting evidence in the

record.  *See Hale v. Bowman*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Here, the record

contains that supporting evidence.

    The plaintiff also alleged that his medications make him so drowsy that he must sleep

up to two hours a day.  The ALJ found this allegation "almost as incredible as . . . [he] found

his testimony of not using alcohol for over three years."  (R. 43).

> Dr. Evans testified that although the claimant's medication could cause
> drowsiness for a while, the drowsiness would have subsided after three
> months.  Dr. Bondalapati, Veterans Administration staff psychiatrist, reports
> on September 18, 2003, that the claimant says "he is doing well without
> depression or manic symptoms.   No side effects are reported due to
> medications." . . .  Dr. Bondalapati saw the claimant on December 18, 2003,
> and reports that he was doing well with his present medications.  The claimant
> had no complaints . . .  No side effects from medications are noted in the
> report.

*Id.*

Dr. Watson's Medical Source Opinion (MSOP) contains functional limitations, and those limitations are based in part on whatever pain the plaintiff does experience.  His report twice mentions pain in conjunction with physical limitations.  (R. 26-27).  Therefore, it is undeniable that the vocational expert did indeed consider the effects of pain on the plaintiff's functional limitations because the reports on which the hypothetical question was premised incorporated the effects of pain.  The hypothetical question was not required to include any evidence of sleepiness or medication side effects because the ALJ properly found that those problems were not supported by the evidence.

In short, the hypothetical question to the vocational expert contained in the interrogatory incorporated all of the plaintiff's limitations which the ALJ found credible.  Thus, the vocational expert's testimony about jobs the plaintiff could perform constituted substantial evidence on which the ALJ could rely.

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be and will be affirmed.  A separate final judgement will be entered.

Done this 17ʰ day of July, 2007.


                                     /s/Charles S. Coody
                                    CHARLES S. COODY
                                    CHIEF UNITED STATES MAGISTRATE JUDGE